IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:20-CV-618-FL

| | |
|---|---|
| SAMUEL STEVEN LESTER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| VALLEY PROTEINS, INC., ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on plaintiff's motion to remand (DE 12). The motion has been briefed fully, and in this posture the issues raised are ripe for ruling. For the following reasons, the motion is denied.

## STATEMENT OF THE CASE

Plaintiff commenced this personal injury action on October 22, 2020, in Cumberland County Superior Court, seeking damages due to injuries he suffered from an explosion at one of defendant's rendering plants in Duplin County, North Carolina, while plaintiff was undertaking welding work.

Defendant filed a notice of removal in this court, on November 20, 2020, on the basis of diversity jurisdiction, under 28 U.S.C. § 1332. Defendant asserts in its notice of removal that plaintiff seeks damages in excess of $75,000.00, and that there is complete diversity of citizenship because plaintiff is a North Carolina citizen and defendant is a corporation with principal place of business in Virginia. In support of its assertion of diversity of citizenship, defendant relies upon 1) a certificate of good standing from the Virginia corporation commission, 2) a 2020 annual report

maintained with the Virginia corporation commission, and 3) information from defendant's website.

Plaintiff filed the instant motion to remand on December 17, 2020, asserting that there is a lack of complete diversity because defendant actually is a corporation with a principal place of business in North Carolina. In support of the motion, plaintiff relies upon annual reports filed with the North Carolina Secretary of State, for the years 2007-2019.[1]

Defendant responded in opposition to the instant motion on January 7, 2021, reaffirming its position in its notice of removal that defendant is a corporation with principal place of business in Virginia. Defendant relies upon an affidavit of W. Stuart Hylton ("Hylton"), who is defendant's chief financial officer, treasurer, and corporate secretary, and exhibits thereto comprising the following: 1) photographs of office locations, 2) minutes of board of director meetings, 3) a W-9 tax form for defendant, 4) printouts of defendant's website, 5) defendant's insurance policies, and 6) an annual report filed with the North Carolina Secretary of State for 2020.

Plaintiff replied in support of its motion on January 15, 2021.[2]

## COURT'S DISCUSSION

A.  Standard of Review

In any case removed from state court, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "The burden of establishing federal jurisdiction is placed upon the party seeking removal." Mulcahey v. Columbia Organic Chem. Co., 29 F.3d 148, 151 (4th Cir. 1994). "If

---

[1] Upon filing of plaintiff's motion, the court stayed scheduling conference activities, pending the court's decision on the instant motion.

[2] The court granted plaintiff leave to file a reply exceeding ten pages, and plaintiff re-filed his reply on February 22, 2021.

2

diversity jurisdiction is challenged, the burden of proof remains on the party invoking federal court jurisdiction, and the citizenship of each real party in interest must be established by a preponderance of the evidence." Roche v. Lincoln Prop. Co., 373 F.3d 610, 616 (4th Cir. 2004), rev'd on other grounds, 546 U.S. 81 (2005).

Further, "[b]ecause removal jurisdiction raises significant federalism concerns, [the court] must strictly construe removal jurisdiction." Mulcahey, 29 F.3d at 151. "If federal jurisdiction is doubtful, a remand is necessary." Id.; see Common Cause v. Lewis, 956 F.3d 246, 252 (4th Cir. 2020) (recognizing the court's "duty to construe removal jurisdiction strictly and resolve doubts in favor of remand") (quoting Palisades Collections LLC v. Shorts, 552 F.3d 327, 336 (4th Cir. 2008)).

B.  Analysis

Under the federal removal statute, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). As pertinent here, a federal district court has original jurisdiction over all civil actions between "citizens of different States" where the amount in controversy exceed $75,000.00. 28 U.S.C. § 1332(a)(1). For purposes of such diversity jurisdiction, "a corporation shall be deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business." 28 U.S.C. § 1332(c)(1).

Here, plaintiff challenges diversity jurisdiction on the basis that defendant's principal place of business is North Carolina, not Virginia as asserted by defendant.[3] To determine defendant's

---

[3] Plaintiff does not dispute that the amount in controversy exceeds $75,000.00, or that defendant is incorporated in Virginia. (Pl's Mem. (DE 13) at 1).

3

principal place of business, the court applies the "nerve center" test as set forth in Hertz Corp. v. Friend, 559 U.S. 77, 93 (2010). Under this test, a corporation's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." Id. at 92-93. "[I]n practice [this] should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." Id. at 93.

Application of the "nerve center" test may produce "occasionally counterintuitive results" in the interest of a "more uniform legal system." Id. at 96. "For example, if the bulk of a company's business activities visible to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York." Id.

"When challenged on allegations of jurisdictional facts, the parties must support their allegations by competent proof." Id. at 96-97. "And when faced with such a challenge," the court must reject the suggestion that "the mere filing of a form like the Securities and Exchange Commission's Form 10–K listing a corporation's 'principal executive offices' would, without more, be sufficient proof to establish a corporation's 'nerve center.'" Id. at 97. "[I]f the record reveals attempts at manipulation—for example, that the alleged 'nerve center' is nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat—the courts should instead take as the 'nerve center' the place of actual direction, control, and coordination, in the absence of such manipulation." Id.

The United States Court of Appeals for the Fourth Circuit has applied the "nerve center" test since <u>Hertz</u> in two cases that are pertinent to the instant motion. In <u>Central West Virginia Energy Co. v. Mountain State Carbon, LLC</u>, 636 F.3d 101 (4th Cir. 2011), the court held that the defendant's principal place of business was in Michigan, where seven of eight "corporate officers—including its chief executive officer, chief operating officer, chief financial officer, and general counsel and secretary—all maintain their offices." <u>Id.</u> at 105. The court rejected the argument that West Virginia instead was defendant's principal place of business even though "its day-to-day operations and public interface occur in West Virginia," along with "daily management activities." <u>Id.</u> at 106.

In <u>Hoschar v. Appalachian Power Co.</u>, 739 F.3d 163 (4th Cir. 2014), the court affirmed a district court's denial of a motion to remand, holding that the defendant's principal place of business was in Ohio, on the basis that its "entire Board of Directors is located" there, and "22 out of [its] 27 officers—including its Chief Executive Officer, Chief Financial Officer, Secretary, and Treasurer—make significant corporate decisions and set corporate policy such that they direct, control, and coordinate [the defendant's] activities" there. <u>Id.</u> at 172. The court rejected the plaintiff's argument that West Virginia was its principal place of business, even though that was the location of five out of 27 officers, who were "responsible for implementing the large-scale directives received from [Ohio] and for managing [the defendant's] day-to-day operations in West Virginia, Virginia, and Tennessee." <u>Id.</u> The court also determined that defendant's own reference on its website to West Virginia "as its headquarters" was not controlling, where defendant's vice president for external affairs testified in deposition that its use of the term "headquarters" was a "misnomer," and made clear by affidavit testimony that "the 'headquarters-type' decisions—that is, setting the overarching direction and control of [the defendant]—occur in [Ohio]." <u>Id.</u> at 173.

5

Applying the foregoing principles here, defendant has proved by a preponderance of the evidence that Virginia is its principal place of business. Critical to this determination is the affidavit testimony of Hylton that "[a]ll of [defendant's] executive officers are located in Winchester," Virginia. (DE 14-1 ¶7). Defendant's physical offices in Winchester are "not merely a shipping address" or a mailing address, "but are instead the main offices for nearly all of [defendant's] officers and directors." (Id. ¶ 4). Defendant maintains now two separate buildings at its address at 151 Valpro Drive, Winchester, VA 22603 (which street name "Valpro" is an abbreviation of the company's name), further evidenced in photographs attached to Hylton's affidavit, which physically have "housed" and are "still housing" corporate officers. (Id.). It has an additional physical office building at 519 W. Jubal Early Drive, Winchester, VA 22601. (Id. ¶ 5). "Nearly all of [defendant's] corporate direction, control, governance, policy-making, departmental coordination, short-term and long-range planning, asset acquisition and investments are made by individuals located in Winchester, Virginia." (Id. ¶ 6).

In addition, "[n]early all of [defendant's] members of the board of directors are located in Virginia" and "reside in Virginia." (Id. ¶ 8). The sole exception is one board member who resides in Florida. (Id.). All quarterly board meetings since January 1, 2017, "have been conducted in the Board Room at 151 Valpro Drive, Winchester," with the exception of one in Maryland, and some meetings in 2020, which have been conducted via Zoom. (Id. ¶ 9). These meetings are further evidenced by copies of regular minutes maintained in the ordinary course of business confirming this location and attendees. (DE 14-4 at 1-15).

In sum, this evidence establishes that defendant's "nerve center" is in Winchester, Virginia, and it in no respect suggests a "nerve center" in North Carolina. Indeed this evidence is more compelling than that addressed by the Fourth Circuit in Central West Virginia Energy and Hoschar,

6

where each defendant had at least some corporate officers and "management of day-to-day operations" in the plaintiff's state. 636 F.3d at 105-106; 739 F.3d at 172-173.

Plaintiff raises several arguments in an effort to cast doubt upon diversity jurisdiction, each of which is unavailing. Plaintiff contends that defendant's annual reports filed with the North Carolina Secretary of State, stating that its "principal office" and "officers" are located at 1309 Industrial Drive, Fayetteville, NC 28301-6323, demonstrate that defendant's principal place of business is in North Carolina. As an initial matter, the "mere filing of a form" like this, "listing a corporation's 'principal executive offices,'" is not "without more . . . sufficient proof to establish a corporation's 'nerve center.'" Hertz, 559 U.S. at 97. Here, there is nothing "more" suggesting a nerve center presence in North Carolina. Id. To the contrary, similar to the testimony in Hoschar, Hylton testifies in his affidavit that "those Annual Reports mistakenly list [defendant's] principal office and . . . officers as 1309 Industrial Drive, Fayetteville 28301." (DE 14-1 ¶ 20). "The building located at 1309 Industrial Drive. . . is a rendering plant," which is "the largest plant that [defendant] owns in North Carolina." (Id. ¶ 21). Hylton cogently explains in detail through description of the range of annual reports that "[t]his was a clerical mistake." (Id.). In sum, considered in light of all the evidence in the record, the North Carolina annual reports do not create any doubt about the existence of diversity jurisdiction.

Plaintiff also takes issue with the types of documents upon which defendant relies in its notice of removal to demonstrate its principal place of business. Plaintiff points out correctly, for example, that defendant's annual reports filed with the Virginia corporation commission, listing Virginia as its principal place of business, "without more, [are] insufficient to establish the principal place of business." (Pl's Mem. (DE 13) at 6 (citing Hertz, 559 U.S. at 97)). Here, however, defendant does have "more" in the form of the Hylton affidavit and its exhibits. In this

7

context, defendant's annual reports filed in Virginia further confirm that defendant's principal place of business is Virginia, even though they are not enough in themselves to establish that fact.[4]

Plaintiff also points out that the address listed on defendant's annual reports filed in Virginia and on its website is a post office box address, suggesting that this may be an attempt at manipulation, such as that identified in Hertz as "nothing more than a mail drop box, [or] a bare office with a computer." 559 U.S. at 97. The Hylton, affidavit, however puts any such suggestion to rest. The evidence of physical location of defendant's corporate office buildings and individuals in Winchester, Virginia, including its extensive history in that location, (see 14-1 ¶ 4), confirms that this is not merely "a mail drop box, [or] a bare office with a computer." 559 U.S. at 97.

Plaintiff criticizes the Hylton affidavit on the basis that it "relies extensively on boilerplate legal conclusions." (Reply (DE 16) at 9). For example, plaintiff suggests that the court should disregard Hylton's statement that "[n]early all of [defendant's] corporate direction, control, governance, policy-making, departmental coordination, short-term and long-range planning, asset acquisition and investments are made by individuals located in Winchester, Virginia." (Id. ¶ 6).[5] This statement as a whole, however, is not conclusory or boilerplate, but rather includes description of a variety activities, in the form of "policy-making, departmental coordination, short-term and long-range planning, asset acquisition and investments." (Id.). Moreover, the general reference to corporate "direction, control, [and] governance" is augmented by other descriptions in the affidavit, including "company-wide responsibilities," "company-wide operations," as well as

---

[4] Plaintiff also takes issue with several additional sources of evidence upon which defendant relies in opposition to the instant motion, such as tax forms, insurance contracts, company website, activities of department heads, and company planes and vehicles. The court does not rely upon these as determinative to the "nerve center" test. Nevertheless, they are additional categories of evidence consistent with the analysis by the court in the text, and they do not detract from it or provide any basis to infer North Carolina is defendant's principal place of business.

[5] Plaintiff also cites to references to "principal place of business" and "headquarters" in the affidavit. (Reply (DE 16) at 10). But, the court does not rely upon these conclusions in its analysis.

"Treasury Operations, Insurance Management, Information Technology, Corporate Purchasing and Leasing, and . . . company-wide accounting," all of which are probative to the nerve center test. (Id. ¶¶ 4-5). In addition, the court considers the challenged statement in the context of the fact that all of defendant's executive officers and board members, except for one, are located in Virginia, and that quarterly board meetings take place in Virginia. (Id. ¶¶ 7, 9).

Plaintiff argues that it is insufficient to document the date and place of board meetings, where the contents of what was discussed at such meetings is not revealed. In light of all the other facts and context set forth in the Hylton affidavit, however, further description of the contents of what was discussed at individual meetings is not required. Critically, there is no suggestion in the record that there have been any board meetings, or any other corporate governance meetings, taking place in North Carolina. Given the description in the Hylton affidavit of corporate governance activities taking place in Winchester, Virginia, along with the locations and positions of the officers located in Virginia, there is no reason to doubt that quarterly board meetings held in Winchester, Virginia, determined corporate governance for defendant.

Plaintiff cites to In re Lorazepam & Clorazepate Antitrust Litig., 900 F. Supp. 2d 8 (D.D.C. 2012) for the proposition that "merely listing the addresses of a corporation's officers and directors" is insufficient to satisfy the nerve center test. (Reply (DE 16) at 6). In re Lorazepam, however, is instructively distinguishable. There, the party asserting jurisdiction offered only "a listing of addresses for corporate executives and directors," including "presumably in some cases home addresses." Id. at 19. The court found that this "offers little in the way of support for where the companies' officers actually 'direct' and 'coordinate' corporate activity." Id. Here, the information provided in the Hylton affidavit offers much more by way of context, history, and

9

descriptions of locations and activities, leading to the inescapable conclusion that defendant's nerve center is in Virginia.

Plaintiff also relies upon a comparison to Channon v. Westward Mgmt., Inc., No. 19-CV-05522, 2020 WL 1233766 (N.D. Ill. Mar. 13, 2020), and Goldenberg Fam. Tr. v. Travelers Com. Ins. Co., No. CV 11-04312 DDP JEDX, 2011 WL 3648490 (C.D. Cal. Aug. 18, 2011). In Channon, however, the removing party did not rely upon the same combination of facts as here. In addition, "each officer-shareholder" who claimed to make corporate decisions in Colorado also "conced[ed] that they . . . work out of the [company's] Chicago office," and two out of four lived outside of Colorado. 2020 WL 1233766, at *6. There is no such similar concession here. Likewise, in Goldenberg, the court remanded because the plaintiff there "offered evidence that California [plaintiff's state of residence] also serves as a center of the company's control and coordination of insurance claims." 2011 WL 3648490, at *2. No such evidence has been offered here.

In sum, defendant has established by a preponderance of the evidence that its principal place of business is in Virginia, and plaintiff has not raised such doubts about the propriety of removal to require remand.

## CONCLUSION

Based on the foregoing, plaintiff's motion to remand (DE 12) is DENIED. The court LIFTS the stay imposed December 18, 2020. An initial order regarding planning and scheduling will follow.

SO ORDERED, this the 15th day of April, 2021.

LOUISE W. FLANAGAN
United States District Judge